**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

DEBRA L. WEGNER,
    Plaintiff,

v.             Civil Action No. 3:14-cv-851-JAG

MANUFACTURERS AND TRADERS
TRUST COMPANY, doing business as
M&T BANK,

LAKEVIEW LOAN SERVICING, LLC,

and

SURETY TRUSTEES, LLC,
as substitute trustee,
    Defendants.

## OPINION

 Debra Wegner defaulted on her home mortgage, leading to foreclosure upon her home. She now brings this contract action, alleging that the defendants breached the terms of her loan agreement. Wegner seeks compensatory damages, and she also seeks rescission of the foreclosure. The defendants, Manufacturers and Traders Trust Company ("M&T") and Lakeview Loan Servicing, LLC ("Lakeview"), have moved to dismiss the case pursuant to Federal Rule of Civil Procedure 12(b)(6).

 Wegner has alleged (1) that her loan agreement mandates several steps the lender must take before foreclosing, (2) that the defendants failed to follow those steps, and (3) that she suffered damages because of their failure to take those steps. These allegations amount to a plausible claim of breach of contract, and require denial, in large part, of the motion to dismiss.

The Court will, however, grant the motion to dismiss in part. Wegner says the defendants breached the contract by including in the foreclosure notice a reminder of the amount of her next payment; this does not violate any provision of law, and the Court will dismiss this portion of the complaint. In addition, the plaintiff has not alleged the absence of an adequate remedy at law, and so the Court will dismiss her claim for the equitable remedy of rescission.

## I. BACKGROUND

Wegner purchased her home on December 28, 2009. Wegner obtained a mortgage loan, evidenced by a note and secured by a deed of trust. The Department of Veterans Affairs ("VA") guaranteed the loan.[1] In 2012, Wegner spent much time away from home taking care of an ill relative. During that same year, the servicer of the mortgage reviewed her escrow account and increased Wegner's payment from $1,582.86 to $1,635.14. (Am. Compl. ¶¶ 21–22.) The servicer sent a notice, dated July 19, 2012, indicating that the payment would increase on September 1, 2012. (*Id.*) Wegner says she never received this notice and remains unaware if the servicer actually mailed the notice.

Wegner continued to make the same $1,582.86 monthly payment from September 2012 to March 2014. Following several letters about the deficiency, defendant M&T sent a default notice giving her thirty days to cure the default. Wegner never cured the default. Based on Wegner's missed payments, defendant Lakeview Loan Servicing, LLC, the holder of the note, initiated the foreclosure sale. On March 5, 2014, defendant Surety Trustees, LLC ("Surety Trustees"), as substitute trustee, sold the house in foreclosure.

Wegner alleges four flaws in the foreclosure process: (1) the notice of default materially overstated the amount in arrears, (2) the notice failed to provide the exact language required in

---

[1] Pursuant to its guaranty, the VA paid off the mortgage, but has waived any rights in the property.

2

the deed of trust indicating Wegner could file suit in court, (3) the notice mandated that Wegner

pay the following month's mortgage payment, and (4) the defendants did not conduct a face-to-

face meeting with her or make a reasonable attempt to reach her by telephone.

## II. ANALYSIS[2]

### A. Count One: Breach of Note and Deed of Trust

In Count One, Wegner alleges she never received a proper 30-day acceleration notice[3]

and, if she did, the notice was defective because: (1) the amount of arrearage was materially

overstated, (2) the defendants did not expressly advise Wegner of her right to bring a court

action to contest the lender's actions; and (3) the notice required payment of amounts not yet

due or overdue, such as the next month's regular payment that would come due in the ordinary

course before the deadline in the cure notice.

To state a cause of action for breach of contract under Virginia law, a plaintiff must

allege "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's

---

[2] In considering the motion, a court must accept all allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999); *Warner v. Buck Creek Nursery, Inc.*, 149 F. Supp. 2d 246, 254–55 (W.D. Va. 2001). To survive a motion to dismiss, a complaint must contain sufficient factual matter that, if accepted as true, "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[3] Although Wegner suggests she never received any notice at all, in her opposition brief she notes that "the amended complaint averred that the notice dated October 16, 2014 was sent." (Pl.'s Mem. Opp'n 4 n.2.) To the extent that Wegner's complaint is unclear, the Court finds that Wegner's complaint alleges that the defendants failed to send a *proper* notice, specifically that the October 4, 2013 notice was improper. The complaint contains no factual allegation that the defendants totally failed to send a 30-day cure notice; instead she claims the notice was fatally defective. *See, e.g., Condel v. Bank of America, N.A.*, No. 3:12-cv-212, 2012 WL 2673167, at *5 (E.D. Va. July 5, 2012) (noting the plaintiff alleged she did not receive "proper notice," but if she did not receive notice at all, she should so allege); *see also Harris v. United States*, No. 4:14-cv-56, 2014 WL 5324941, at *4 (E.D. Va. Oct. 17, 2014) (finding that, though the defendants argued the plaintiff did not adequately plead a claim for breach of contract based on receiving no notice at all, she did state a breach of contract claim regarding the improper contents of the notice).

violation or breach of that obligation, and (3) injury or damage to the plaintiff caused by the breach of obligation." *Filak v. George,* 267 Va. 612, 619, 594 S.E.2d 610, 614 (2004).

### i. Overstatement of the Amount in Arrears

Wegner states a plausible claim for breach of contract by alleging that M&T overstated the amount in arrears. *Harris v. United States*, No. 4:14-cv-56, 2014 WL 5324941, at *4 (E.D. Va. Oct. 17, 2014); *see also Vazzana v. CitiMortgage, Inc.*, No. 7:12-cv-497, 2013 WL 2423092, at *2 (W.D. Va. June 4, 2013) (denying a motion to dismiss when the plaintiff alleged a breach of contract based on the allegation that the defendant materially overstated the amount in arrears).[4] The note and deed of trust contractually obligated M&T to provide notice before accelerating the loan. (Am. Compl. Ex. A, at 3.)[5] According to Wegner, the notices overstated the total amount due. The final notice listed the amount due as $10,609.97, (Am. Compl. Ex. F), but Wegner states that the amount due at that time was in fact only $1,386.06, (Am. Compl. ¶ 27.) Consequently, the notice allegedly misstated the amount due by $9,223.91. Overstating the arrearage by such a wide measure sufficiently alleges a breach.

Wegner adequately pleads that this breach caused her harm. She says that if she had received a correct notice with some reasonable time before the deadline to cure, she could have brought the loan current. (Am. Compl. ¶ 30.) *See Harris*, 2014 WL 5324941, at *4 (finding that the plaintiff adequately pled injury because she alleged she would have found a way to bring her loan current if she had received a proper cure notice); *Vazzana*, 2013 WL 2423092, at *2 (finding that the plaintiff sufficiently pled she was harmed by the alleged breach because if the

---

[4] *See also Blaney v. Beneficial Financial I, Inc.*, 7:13-cv-333, 2014 WL 888419, at *2 (W.D. Va. Mar. 6, 2014) (allowing plaintiff to amend complaint to allege he could have cured if the notice provided the accurate amount due to cure the default).
[5] When referring to a page of an exhibit, the Court uses the page number assigned by the CM/ECF system.

4

notes adequately stated the amount in arrears she would have be able to pay that amount). Wegner says she had about $10,000 in a retirement account during 2012 and 2013, and claims her mother could have helped her in bringing the loan current. (Am. Compl. ¶ 30.) For these reasons, Wegner states a viable claim for a breach of contract based upon the overstated amount in arrears.

### ii. Right to Bring Court Action

Wegner pleads facts sufficient to conclude that the defendants breached the deed of trust and note by failing to include specific language regarding her right to bring court action. The loan documents read: "the notice [of default] shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale." (Am. Compl. Ex. B, at 13.) The notice sent by M&T, however, only tells Wegner that she had "certain rights, including right to argue that you did keep the promises and agreements under the Note and Mortgage/Deed of Trust." (Am. Compl. Ex. F.) Unfortunately for the defendants, the deed of trust obligated M&T to notify Wegner that she could "bring court action," not just that she had the "right to argue."

In our great country, married couples, baseball managers, philosophers, environmentalists, crackpots, talk show hosts, atheists, believers, retail customers, barbers, taxicab drivers, and—as relevant here—mortgage borrowers have a right to argue. But until things really go bad, most arguments do not result in law suits. A notice including the language "right to argue" differs from a notice informing a borrower she may file a lawsuit to prevent acceleration and foreclosure. *See Mayo v. Wells Fargo Bank, N.A.*, 30 F. Supp. 3d 485, 494

(E.D. Va. 2014) (denying a motion to dismiss in similar circumstances).[6] An allegation that the defendants did not give the required notice states a plausible cause of action.

### iii. Requirement of Payment of Amounts Not Yet Due

Including the next month's payment in the notice of default does not breach the notice requirement. *See Matanic v. Wells Fargo Bank, N.A.*, No. 3:12CV472, 2012 WL 4321634, at *4 (E.D. Va. Sept. 19, 2012) (finding that "the requirement to pay the next month's regularly scheduled payment by the end of the cure period does not violate the terms of the Note or Deed of Trust"); *Townsend v. Fed. Nat'l Mortg. Ass'n*, 923 F. Supp. 2d 828 (W.D. Va. 2013) (holding that requiring submission of the next regular monthly payment in order to cure default does not breach the agreement between the parties, but simply serves as a reminder). The inclusion of the next month's payment provides "a reminder to the borrower that paying the amount required to cure the default does not relieve him of paying the regularly scheduled payment due before the cure period ends." *Matanic*, 2012 WL 4321634, at *4. The reminder does not render the notice inaccurate.

### B. Count Two: Breach of the Deed of Trust

Paragraph 22 of the deed of trust requires that if the default is not cured the lender may invoke "the power of sale and any other remedies permitted by applicable law."[7] (Am. Compl. Ex. B, at 13.) Wegner says that this language incorporates all of the regulations pertaining to VA

---

[6] As recognized in *Mayo*, other courts have recognized that the language about the right to argue is the "functional equivalent" of advice about the right to file suit. *Mayo*, 30 F. Supp. 3d at 494. At some point, the defendants may persuade the Court that this breach is immaterial, but that is an issue for another day.

[7] The deed defines "applicable law" in Paragraph J of the Definitions section as, "all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions." (Am. Compl. Ex. B, at 4.)

loans into the contract.[8]   One of the VA regulations requires a face-to-face meeting (or an attempt to set up a face-to-face meeting) before a foreclosure, and Wegner says that the defendants did not meet this requirement.[9]   Virginia courts have found that lending regulations are enforceable through the loan documents. *Squire v. Va. Hous. Dev. Auth.*, 287 Va. 507, 516, 758 S.E.2d 55, 60 (2014) (finding that the deed of trust incorporated relevant HUD regulations, such that a foreclosure would not be permitted if it violated those regulations); *see also Mathews v. PHH Mortg. Corp.*, 283 Va. 723, 734–35, 724 S.E.2d 196, 201 (2012) (holding that the deed of trust incorporated, as a condition precedent to foreclosure, the HUD regulation requiring a face-to-face meeting before foreclosure).   Wegner alleges that through the "applicable law" clause, the loan documents incorporate the VA regulations.  If true, this incorporation may allow the plaintiff to enforce the VA regulations under the deed of trust.[10]   Thus, Wegner alleges facts sufficient to state a claim for breach of contract by failing to follow those regulations.[11]   *See*

---

[8] The VA Guaranteed Loan and Assumption Policy Rider also provides that any provisions of the "Security Instrument or other instruments executed in connection with said indebtedness which are inconsistent with said Title or Regulations, including, but not limited to . . . the provision that the Lender may accelerate payment of the secured indebtedness pursuant to the provision that the Lender may accelerate payment of the secured indebtedness . . . are hereby amended or negated to the extent necessary to conform such instruments to said Title or Regulations."  The Rider refers to Title 38 of the United States Code and regulations issued under that code; these are the regulations pertaining to VA home loan.  (Dk. No. 13-2, at 18–19.)

[9] The parties appear to disagree as to which VA regulations pertain to this particular loan.  The plaintiff cites 38 C.F.R. § 36.4350, while the defendants cite 38 C.F.R. § 36.4278, a section which actually pertains to manufactured homes and lots.  38 C.F.R. §36.4201 (stating the §36.4200 series applies to loans entitled to guaranty under 38 U.S.C. § 3712, which pertains to loans to purchase manufactured homes and lots).  Either way, both sets of rules require a face-to-face meeting, or at least an attempt to set one up.

[10] *See Mullins v. GMAC Mortg. LLC.*, No. 1:09-cv-00704, 2011 WL 1298777, at *2-3 (S.D. W.Va. Mar. 31, 2011) (noting where plaintiffs allege a straight forward breach of contract claim, they are not "suing to enforce HUD regulations under some vague and likely non-existent cause of action allowing a member of the public to take upon himself the role of regulatory enforcer").

[11] The defendants say, in any event, that the previous servicer of the loan, tried to set up a meeting with Wegner many times, to no avail.  This issue relies on facts outside the face of the complaint, and, therefore, is an issue for summary judgment, not a motion to dismiss.

*Ranson v. Bank of Am.*, No. 3:12–5616, 2013 WL 1077093, at *4-5 (S.D. W.Va. Mar. 14, 2013) (allowing a breach of contract claim to survive in similar circumstances). Whether the true facts (not mere allegations) incorporate those provisions into the contract, whether the defendants actually violated those regulations, and whether any violation was material are issues for summary judgment. At this stage, however, Wegner has alleged a plausible claim.

### C. Rescission

The focus of the complaint is a claim for monetary damages as a result of the alleged breaches. Wegner, however, also asks the Court to rescind the foreclosure sale. A court may not order rescission, an equitable remedy, where the plaintiff has a remedy at law. *See generally Runion v. Helvestine*, 501 S.E.2d 411, 416 (Va. 1998). Given that Wegner demands compensatory damages, she is hard pressed to say that she has no remedy at law. Indeed, Virginia law recognizes a claim for damages in precisely this situation. *Mathews*, 283 Va. at 731, 724 S.E.2d at 199 (stating a borrower may sue for damages *after* the improper sale, or sue to bar the improper sale in equity *before* it takes place) (emphasis added).[12] Since damages are available to compensate a plaintiff for an improperly-conducted foreclosure sale, the Court finds rescission unavailable to Wegner. *See Foster v. Wells Fargo Bank, N.A.*, No. 3:14-CV-00017, 2014 WL 3965059, at *6–7 (W.D. Va. Aug. 13, 2014).

Wegner has named Surety Trustees as a nominal defendant in this action because Virginia law requires the substitute trustee as a necessary party to any action seeking to block a

---

[12] *See also Ramos v. Wells Fargo Bank, N.A.*, 770 S.E.2d 491, 494 (Va. 2015) (stating a foreclosure cannot be "unwound" under Virginia law); *Schmidt v. Household Fin. Corp., II*, 276 Va. 108, 114–15, 661 S.E.2d 834, 837–38 (2008) (calling rescission of a deed of trust "a remedy which calls for the highest and most drastic exercise of the power of a court of chancery," and noting "there must be first a sufficient averment of facts showing the plaintiff entitled in equity to the relief which he seeks, and satisfactory proof of these facts, to justify the interposition of the court") (quoting *Bonsal v. Camp*, 111 Va. 595, 599, 69 S.E. 978, 979 (1911)).

foreclosure sale. Because the Court finds rescission of the foreclosure sale unavailable to Wegner, the Court will dismiss Surety Trustees as a party.

### III. CONCLUSION

For the reasons stated above, the Court grants in part and denies in part the motion to dismiss. Wegner may proceed on her breach of contract claim based on her allegations that (1) the amount in the notice was materially overstated, (2) the notice failed to provide Wegner with the language provided in the contract, specifically that she had the right to sue, and (3) the defendants failed to comply with the VA regulations when they failed to conduct, or try to conduct, a face-to-face meeting. The Court dismisses the Wegner's claim for rescission and her claim for damages arising from the inclusion of the following month's payment in her notice of default. The Court also dismisses Surety Trustees as a defendant.

The Court will issue the appropriate order.

Let the Clerk send a copy of this Opinion to all counsel of record.

/s/
John A. Gibney, Jr.
United States District Judge

Date: December 16, 2015
Richmond, VA

9